Filed 10/7/25  In re Z.B. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re Z.B. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>R.E.,<br><br>        Defendant and Appellant. | D086048<br><br><br>(Super. Ct. No. NJ15920A&B) |


APPEAL from orders of the Superior Court of San Diego County, Alejandro Morales, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

David Smith, Acting County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

1

Mother R.E. appeals orders issued at the Welfare and Institutions Code section 366.26 hearings for her children, Z.B. and V.B., which terminated her parental rights and selected adoption as the children's permanent plans. Mother's sole contention on appeal is that the juvenile court erred by finding the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224.1 et seq.) did not apply to the children's cases because the San Diego Health and Human Services Agency did not comply with its duties of initial inquiry under ICWA. We conclude the court did not err and therefore affirm.

I.

A.

In March 2023, the Agency filed a petition under section 300(b) to declare Z.B., then two years old and having tested positive for fentanyl, a dependent of the juvenile court. In its attached ICWA-010(A) form, the Agency indicated it had reason to believe Z.B. is or may be an Indian child based on its inquiry of the paternal grandmother, who informed the Agency both she and the deceased paternal grandfather had unidentified Indian ancestry.

In its detention report, the Agency attached a number of Father's arrest reports, including a 2021 arrest report indicating a female passenger in Father's car told him she "used to date [Father's] cousin."

At the detention hearing, Mother and Father denied Z.B. was or may be an Indian child, so the court deferred its determination of that issue. The court detained Z.B. and ordered the Agency to investigate whether he was or may be an Indian child and report back to the court.

In its jurisdiction and disposition report, the Agency described its pending efforts to locate other relatives of Z.B. In an April addendum report, the Agency stated both Mother and Father denied (1) any family member was

2

a member or enrolled member of a tribe and (2) there was any other family member who could provide additional information about any Indian ancestry. The Agency also described its interview with the maternal grandfather. He stated the maternal grandmother was deceased and Mother had no siblings other than his 15-year-old son from another marriage. He denied (1) any family member was a member or enrolled member of a tribe and (2) there was any other family member who could provide additional information about any Indian ancestry. He also mentioned that during a 2022 visit from Mother and Father, the great uncles, aunts, and great-great grandmother thought it was obvious they were using drugs.

Mother filed an ICWA-020 form indicating neither she, Z.B., nor any lineal ancestor was a member of, or eligible for membership in, a federally recognized Indian tribe.

In a May addendum report, the Agency stated the paternal grandmother denied any family member was a member or an enrolled member of a tribe. When asked whether there were other family members the Agency could contact regarding Indian heritage, she stated, "'I believe there's some Indian on my mother's side and she's still alive so give me a day or two to get ahold or her.'" The paternal grandmother also stated that her deceased father had told her he had two types of Indian heritage in his background, but had no further details regarding her parents' purported Indian ancestry. The paternal grandmother said she could provide the Agency contact information for her living relatives who could answer questions regarding Indian ancestry.

Mother and Father filed a joint ICWA-030 form in which they indicated "N/A" to the question of whether they had any Indian tribe membership.

3

At the July 2023 contested adjudication and disposition hearing, Father's counsel represented Father no longer believed he had any Indian ancestry. The Agency informed the court the paternal grandmother had not responded to its attempts to obtain further information. The court thus found no reason to believe Z.B. was an Indian child and therefore found, without prejudice, that ICWA did not apply to his case. The court made a true finding on the dependency petition's allegations, declared Z.B. a dependent child of the court, and removed him from his parents' custody.

At the contested six-month review hearing, the court again found, without prejudice, that ICWA did not apply to Z.B.'s dependency proceeding, terminated the parents' reunification services, and set a section 366.26 hearing.

In July 2024, Father filed an ICWA-020 form indicating neither he, Z.B., nor any lineal ancestor was a member of, or eligible for membership in, a federally recognized Indian tribe.

In its section 366.26 report, the Agency recommended the court terminate the parents' parental rights and select adoption as Z.B.'s permanent plan.

B.

In an August 2024 addendum report, the Agency stated Mother had given birth to V.B. in July. The Agency filed a petition under section 300(b) for V.B., alleging he tested positive for amphetamines and fentanyl, and the court detained him. In July, Father informed the Agency he did not claim Indian heritage, but he may have one-eighth Indian heritage from the Blackfoot tribe, which was not enough to register with that tribe. Given this, the Agency stated it would conduct further ICWA inquiry and update the court.

4

In its jurisdiction and disposition report for V.B., the Agency represented the paternal grandmother, when asked if anyone in her family had any Indian ancestry, replied, "'I've heard Cherokee and one other kind but I don't know what it was.'" Regarding her reason for believing Z.B. and V.B. may be of Indian ancestry, she stated, "'I think on my kids['] father[']s side, but it would have been ways back, and on my side, there is some on supposedly on both sides but [I] don't know any details or which tribe.'" She stated her mother may have more information but suffered from dementia. The Agency reported the paternal great grandmother said she did not know "'anything about anyone having Indian blood at all.'" The Agency also described its attempts to contact the maternal step-grandmother, a maternal great aunt, a paternal aunt, and a paternal relative. Based on the information provided by these relatives, the Agency stated it had sent informal inquiry letters to the Bureau of Indian Affairs, the Eastern Band of Cherokee Indians, the Cherokee Nation, the United Keetowah Band of Cherokee Indians, and the Blackfeet Tribe of Montana. The Agency attached copies of its inquiry letters and certified mail receipts.

C.

At the October contested jurisdiction and disposition hearing for V.B., the court found ICWA did not apply, declared V.B. a dependent of the court, denied reunification services to the parents, and set a section 366.26 hearing for V.B.

In a December report, the Agency indicated all tribes except the Blackfeet Tribe had responded to its inquiry letters and denied Z.B. was an Indian child. In its January 2025 addendum report, the Agency stated it had called the Blackfeet Tribe and was instructed to send it another letter with

more limited information (i.e., only the names of the children and their parents). The Agency had mailed that additional letter to the tribe.

In its section 366.26 report for V.B., the Agency recommended the court find, without prejudice, that ICWA did not apply to his case, terminate the parents' parental rights, and select adoption as his permanent plan.

In its March 2025 addendum report for Z.B. and V.B., the Agency stated the Blackfeet Tribe had responded to its inquiry letter, stating it was unable to find either child listed on its tribal rolls and it did not recognize them as Indian children.

On March 6, 2025, the court held contested section 366.26 hearings for Z.B. and V.B. and issued orders terminating the parental rights of Mother and Father and selecting adoption as the children's permanent plans. The court also found ICWA did not apply to the children's cases.

## II.

Mother contends substantial evidence does not support the court's findings that ICWA did not apply to the children's cases because the Agency failed to comply with its duties of initial inquiry pursuant to ICWA and section 224.2. Specifically, Mother argues the Agency did not comply with its duties of initial inquiry because it did not attempt to contact, or clarify the identities of, the maternal and paternal great aunts and uncles, the maternal great-great grandmother, Father's cousin, and Mother's minor half-brother. We disagree.

Section 224.2 imposes an "affirmative and continuing duty" upon the Agency and the juvenile court to inquire whether a child subject to juvenile dependency may be an Indian child. (§ 224.2(a).) Section 224.2(b) creates an expanded duty of initial inquiry that requires the Agency to ask "extended family members" and "others who have an interest in the child" whether the

6

child may be an Indian child. ICWA defines "extended family member" by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1(c).)

Generally, we review ICWA findings for substantial evidence. (§ 224.2(i)(2).) When the facts are undisputed, we independently determine ICWA compliance. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

The record shows, as discussed above, that the Agency inquired of Mother, Father, the paternal grandmother, and the maternal grandfather regarding any possible Indian ancestry and the names of, and contact information for, any other family members who may know about such possible ancestry. In response to the Agency's inquiries, those persons provided the names of and contact information for several relatives.

Although Mother argues the Agency should have contacted the maternal and paternal great aunts and uncles, the maternal great-great grandmother, and Father's cousin, the record shows—and she does not dispute—that the Agency did not have the names of, or contact information for, those persons. ICWA does not require the Agency to search for and inquire about Indian ancestry with every conceivable family member. The duty of initial inquiry "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140; see also *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082 [no duty to inquire of unidentified family members or persons for whom agency has no contact information].) "The Agency is not required to 'cast about' for information or

7

pursue unproductive investigative leads." (*D.S.*, 46 Cal.App.5th at p. 1053; see also *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413 ["the obligation is only one of inquiry and not an absolute duty to ascertain or refute [Indian] ancestry"].)

Further, none of the unnamed relatives on which Mother relies was an "extended family member" the Agency *must* attempt to contact and inquire about Indian ancestry. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1(c).) The Agency also did not have a duty to contact and inquire of Mother's half-brother because he had not reached 18 years of age and therefore was also not an "extended family member." (*Ibid.*) Based on our review of the record, we conclude substantial evidence supports the court's findings that ICWA did not apply to the children's cases.

III.

We affirm the orders.

CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.